IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHRISTOPHER KYLE BAILEY,

                Plaintiff,

v.                                          CIVIL ACTION NO.  2:13-cv-13505

JOSEPH BRADFORD, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Christopher Kyle Bailey's ("Plaintiff") motion for leave to file a second amended Complaint, and Plaintiff's and Defendant Nationwide Property and Casualty Company's ("Nationwide") cross motions for partial summary judgment on Plaintiff's claim for attorney's fees pursuant to *Hayseeds, Inc. v. State Farm Fire & Casualty*, 352 S.E.2d 73 (W. Va. 1986).  For the reasons that follow Plaintiff's motion for leave to file a second amended complaint [ECF 6] is **GRANTED IN PART** and **DENIED IN PART**, Plaintiff's motion for partial summary judgment [ECF 11] is **GRANTED**, and Nationwide's motion for partial summary judgment [ECF 16] is **DENIED**.

### I.     BACKGROUND

This case arises from a single-vehicle ATV accident ("the accident") that occurred on May 19, 2012.  Plaintiff, a citizen of West Virginia, was a passenger on an ATV driven by Defendant Bradford and sustained injuries when the ATV hit a tree.  (ECF 16-1 at 1−2; ECF 1-1 at 1.)

In August 2012, Plaintiff filed suit against Defendant Bradford in the Circuit Court of Nicholas County, West Virginia. (ECF 1-3 at 1.) At some point thereafter, Plaintiff made a claim for and accepted the limits of the underlying liability policy held by Defendant Bradford. (ECF 11-1 at 2; ECF 1-1 at 3; ECF 1-2.)

Plaintiff, however, also had underinsured motorist ("UIM") coverage with Nationwide, which is an Ohio Corporation with its principal place of business in Columbus, Ohio. (ECF 11-1 at 1−2; ECF 1 at 1.) As relevant here, the definition of "underinsured motor vehicle" in Plaintiff's UIM policy excluded "any equipment designed for use mainly off public roads *except while on public roads*." (ECF 16-2 at 2 (emphasis added).)

On October 29, 2012, Plaintiff wrote to Nationwide providing notice of a proposed settlement agreement with Defendant Bradford's insurer, and requesting that Nationwide waive its subrogation rights against Bradford. (ECF 11-1 at 1−2; ECF 17 at 2.) Nationwide asserts in its memorandum of law that "Plaintiff provided notice of his potential underinsured motorist claim to Nationwide on November 5, 2012," which the Court understands to mean that Plaintiff's October 29, 2012, letter was received by Nationwide on that date.[1] Additionally, Nationwide further asserts[2] that on that same date it requested and received the West Virginia Uniform Traffic Crash Report ("Crash Report") for the accident. (ECF 17 at 3.)

In that Crash Report, the officer who completed the report indicated that the "highway class" on which the accident occurred was "private property/off roadway." (ECF 16-1 at 1.) Elsewhere, in the narrative section of the report, the officer wrote that "[the ATV] driven by

---

[1] The portion of Plaintiff's amended Complaint that Nationwide cites as record support for this assertion, however, does not in fact indicate that "Plaintiff provided notice of his potential underinsured motorist claim to Nationwide on November 5, 2012." (ECF 17 at 2.) Indeed, the cited paragraph does not state any date, and no other evidence regarding when such letter was received has been provided. (ECF 1-1 at 3.)

[2] Again, the record support to which Nationwide cites in support of this assertion does not appear to indicate the date on which such report was requested or received by Nationwide. (ECF 16-1.)

[Bradford] was traveling down Nile Road heading towards the Persinger Sandbar on a straight stretch and swirved [sic] to miss hitting his dog and ran into a tree." (ECF 16-1 at 2.) The report further listed the "location of first harm event" as "on roadway." (ECF 16-1 at 1.)

Later in November,[3] C. William Davis, counsel for Nationwide, and David Schwirian, counsel for Plaintiff, conferred by telephone regarding Plaintiff's settlement with Defendant Bradford's insurer and also discussed Plaintiff's possible underinsured motorist claim. (ECF 19-1 at 1.) The parties disagree regarding the conclusions each reached during that call with respect to whether the accident occurred on a public road. (ECF 19-1 at 2.) Based on an email provided by Nationwide, Mr. Davis appears to have been under the impression that Mr. Schwirian confirmed that the accident did not occur on a public roadway. (ECF 16-3 at 1.) In an affidavit, Mr. Schwirian indicates that he did not admit that the accident did not occur on a public road as he had no basis to admit or deny such an assertion, and was not, in fact, aware that the location of the accident was of any importance prior to the call. (ECF 19-1 at 1−2.) The parties agree that Mr. Davis agreed to provide Plaintiff's counsel with a copy of Plaintiff's Nationwide policy. (ECF 16-3 at 1; ECF 19-1 at 2.)

On December 7, 2012, Mr. Davis wrote to Mr. Schwirian to "confirm that the accident . . . . involved a vehicle designed for use mainly off public roads and . . . . did not occur on a public road. (ECF 16-4 at 1.) "Based upon these facts," Mr. Davis indicated, the ATV "[did] not meet the definition of an underinsured motor vehicle under [Plaintiff's policy]." (*Id.*) Mr. Davis stated that he would forward a certified copy of that policy upon his receipt of it. (*Id.*)

---

[3] Nationwide states in its memorandum of law that this conversation took place on November 28, 2012, and in the following paragraph discusses "the same telephone conversation" as occurring on November 26, 2012. (ECF 17 at 3.) The portion of the record cited for both of these assertions concerns a conversation that is described as occurring on November 16, 2012. (ECF 16-3 at 1.) Similarly, Mr. Schwirian's affidavit states that said phone call occurred on or about November 16, 2012. (ECF 19-1 at 1.)

On January 16, 2013, Mr. Davis again wrote to Mr. Schwirian attaching a certified copy of Plaintiff's insurance policy.  (ECF 16-5 at 1.)  Mr. Davis indicated that it was his understanding that "the accident in question did not occur on a public road" and requested that Mr. Schwirian advise him "if [this] understanding is incorrect, or if you believe the attached policy provides coverage for [Plaintiff's] injuries . . . ."  (ECF 16-5 at 1.)

On January 29, 2013, Mr. Schwirian wrote Mr. Davis indicating, as pertinent here, that "[i]t appears that the central issue is whether or not the accident occurred on a public road."  (ECF 16-6 at 1.)  Mr. Schwirian enclosed the Crash Report and quoted that portion of the narrative indicating that the ATV was "traveling down Nile Road" and also included a map and other materials (including an ambulance patient care report that listed the accident location as "Nile Road") in support of his belief "that the accident clearly occurred on a 'public road.'"  (ECF 16-6 at 2; ECF  19-1 at 7)   The letter concluded by making a policy limits settlement demand on behalf of Plaintiff for $20,000.  (ECF 16-6 at 2.)

On February 11, 2013, Mr. Davis replied by observing that he understood from Mr. Schwirian's letter "that you now believe that the accident . . . occurred on [a public road]" but reiterated that the Crash Report listed it as occurring on "Private Property/Off-Roadway."  (ECF 16-7 at 1.)  In light of Mr. Schwirian's "concern," however, Mr. Davis indicated that he would further investigate the location of the accident and that he "hope[d] to have the investigation completed within the next three weeks."  (*Id.*)  Mr. Davis indicated that when the investigation was complete, he would report to Mr. Schwirian.  (*Id.*)

This appears to have been the last communication between the parties prior to Plaintiff's bringing suit against Nationwide.  At some point, presumably thereafter,[4] Mr. Davis contacted

---

[4] The portion of the record that Nationwide cites supporting this assertion is a letter from Mr. Davis to another counsel for Nationwide.  There is no indication when such contact was made, including whether it was made before

the investigating officer listed on the Crash Report and unsuccessfully tried to arrange to meet him at the accident scene to determine whether the accident occurred on a public roadway or private roadway.  (ECF 16-8 at 1.)

On February 27, 2013, the Circuit Court dismissed with prejudice all of the individual liability claims against Defendant Bradford as a result of the parties' settlement.  (ECF 1-2 at 1.) The Circuit Court permitted Defendant Bradford to remain a party to the action in name only for the purpose of allowing Plaintiff to pursue his UIM claims against Nationwide.  (ECF 1-2 at 1.)

On April 22, 2013, Plaintiff filed an amended Complaint in the Circuit Court asserting a breach of contract claim and declaratory judgment action against Nationwide and seeking UIM coverage benefits, and, as pertinent here, consequential damages pursuant to the West Virginia Supreme Court of Appeals' decision in *Hayseeds, Inc. v. State Farm Fire & Casualty*.  (ECF 1-1; ECF 1-3.)

On June 5, 2013, Nationwide removed the case to this Court on the basis of diversity jurisdiction.  (ECF 1.)  Plaintiff did not object to removal or seek remand.

On June 12, 2013, Nationwide filed an answer denying Plaintiff's allegation that it was under an obligation to provide UIM coverage or under an obligation to pay Plaintiff the policy limits.  (ECF 4 at 3 ¶16; ECF 1-1 at 4 ¶16.)

Nationwide asserts in its memorandum of law that on June 28, 2013, it informed Plaintiff's counsel that its investigation was complete, that the Crash Report's representation that

---

or after Plaintiff filed his lawsuit.  Presumably, the contact occurred sometime between February 11, 2013, when Mr. Davis indicated that he would make an investigation, and May 20, 2013, the date of the letter in question.  (ECF 16-8.)

the accident occurred on "Private Property/Off-Roadway" appeared to be incorrect, and that Plaintiff's claim was accepted and would be paid.[5]  (ECF 17 at 6.)

On July 12, 2013, Nationwide tendered payment to Plaintiff for his policy limit of $20,000.  (ECF 11-4 at 1.)

## II.    SECOND AMENDED COMPLAINT

Plaintiff seeks leave to file a second amended complaint.  (ECF 6.)  Nationwide has responded by opposing, in part, Plaintiff's proposed amendments.  (ECF 8.)

### A.  Legal Standard

Federal Rule of Civil Procedure 15(a)(1) states, in pertinent part, that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), whichever is earlier."  If a party seeks to amend its pleadings in all other cases, it may only do so "with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason "such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Ward Elec. Serv. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987); *Gladhill v. Gen. Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir. 1984).

"[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

---

[5] Nationwide cites nothing in the record in support of this assertion.

"Leave to amend should be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face. A proposed amendment is futile 'if . . . [it] fails to satisfy the requirements of the federal rules,' such as Rule 12(b)(6)." *Friend v. Remac Am., Inc.*, 924 F. Supp. 2d 692, 696 (N.D. W. Va. 2013) (citations omitted).

A motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

### B. Discussion

Plaintiff seeks to amend his Complaint to assert a claim for violation of the Uniform Trade Practices Act ("UTPA"), W. Va. Code § 33-11-4(9), along with assertions of various

insurance commissioner's regulations.  He also alleges liability against Nationwide pursuant to *Shamblin v. Nationwide Mut. Ins. Company*, 396 S.E.2d 766 (W. Va. 1990), stating that Nationwide "is liable for any excess verdict rendered against [Defendant Bradford]" (ECF 6-1 at 9 ¶43, 10).  Nationwide responds that it does not object to Plaintiff's proposed amendment to add his statutory claim (ECF 8 at 8), but argues that the proposed second amended Complaint brings a futile cause of action pursuant to *Shamblin*.  Nationwide further argues that the second amended Complaint unnecessarily retains a negligence count against Defendant Bradford.  (ECF 8 at 1, 8.)  The parties' principal disagreement concerns the futility of the second amended Complaint's assertions of liability under *Shamblin*, and it is this dispute that the Court will first address.

Under *Shamblin*, an insurer may be liable to its insured for personal liability in excess of policy limits, where there is a failure on the part of an insurer to settle within policy limits where there exists the opportunity to settle and release the insured from any and all personal liability. Syl. Pt. 2, 4, 396 S.E.2d at 768.

In *Marshall v. Saseen*, the West Virginia Supreme Court of Appeals extended the principle articulated in *Shamblin* to the underinsured motorist context, holding that:

> Where an uninsured or underinsured motorist insurance carrier fails to settle within its policy limits, it may be liable in a separate suit for the excess verdict returned by a jury for its failure to make a good faith settlement within its policy limits under the principles set out in *Shamblin* . . . .

Syl. Pt. 7, 450 S.E.2d 791, 793, 798 (1994).

More recently, in *Strahin v. Sullivan*, the West Virginia Supreme Court of Appeals explained that:

> In order for an insured or an assignee of an insured to recover the amount of a verdict in excess of the applicable insurance policy limits from an insurer pursuant to this Court's decision in *Shamblin*

> *. . . . the insured must be actually exposed to personal liability in*
> *excess of the policy limits at the time the excess verdict* is rendered.

Syl. Pt. 9, 647 S.E.2d 765, 768 (2007) (emphasis added).

Importantly, in each of these three cases—the only authority on which the parties rely—the insurance company's potential liability was related to the personal liability of the insured where an excess judgment had been entered.  *See Strahin*, 647 S.E.2d at 769−71 (discussing effect of an assignment where jury verdict had been entered in excess of the pertinent policy limits of the insured); *Marshall*, 450 S.E.2d at 798 (discussing liability that may attach "in a separate suit *for the excess verdict returned by a jury*") (emphasis added); *Shamblin*, 396 S.E.2d at 769, 776 (noting that insured sought to recover for an excess jury verdict rendered against him in a previous lawsuit as the result of insurer's refusal to settle a liability claim, and articulating test for "assessing whether an insurer is liable to its insured for *personal liability in excess of policy limits*") (emphasis added); *see also Mirandy v. Allstate Ins. Co.*, 151 F.3d 1029, *5 (4th Cir. 1998) (unpublished) (observing that "*Shamblin* and its progeny deal with situations *where the insured sought recovery for an excess verdict that the insurer declined to pay*") (emphasis added); *Wilson v. Liberty Ins. Underwriters, Inc.*, CIV.A. 2:07-0478, 2008 WL 538883, at *4 (S.D. W. Va. Feb. 25, 2008) (Copenhaver, J.) (explaining that under *Shamblin* "[a] plaintiff must show that the insurer had an opportunity to settle within policy limits, that the settlement would have released the plaintiff from any and all personal liability, that the insurer failed to settle, *and that the plaintiff suffered personal liability for an excess verdict as a result of the insurer's failure*") (emphasis added); *Strahin*, 647 S.E.2d at 771 (noting that in *Shamblin* the Court "declined to adopt a strict liability standard whereby an insurer would have been liable any time it refused to settle within policy limits *and an excess verdict* was later obtained against the insured") (emphasis added).

9

Here, however, it appears that at the time this civil action was removed to federal court all claims of personal liability against Defendant Bradford had been settled and that the only claims remaining were against Nationwide.  (ECF 1-2 at 1.)  Indeed, Defendant Bradford had been dismissed with prejudice by the Circuit Court but permitted to remain a party to this action in name only for the purpose of allowing Plaintiff to pursue his claims against Nationwide.  (*Id.*)

Plaintiff makes no factual allegation that any excess verdict has been rendered in this case, and does not dispute Nationwide's assertion that because Plaintiff has released and dismissed Defendant Bradford, the alleged tortfeasor, there should *never* be an excess verdict rendered in this case.  (ECF 8 at 6.)  In consideration of the foregoing, the Court cannot find that Plaintiff's second amended Complaint contains plausible factual allegations stating a claim under which Nationwide could be subjected to *Shamblin* liability.

Accordingly, the Court **FINDS** that the proposed amendment to assert liability against Nationwide for the amount of any excess verdict which is rendered against Defendant Bradford is futile and **DENIES IN PART** Plaintiff's motion for leave to file the proposed second amended complaint with respect to that cause of action.

Plaintiff's proposed amendment to add his UTPA and related claims as Count III, however, is not opposed by Nationwide, and the Court otherwise finds the pertinent factors weigh in favor of permitting such an amendment.  Accordingly, the Court **GRANTS IN PART** Plaintiff's motion for leave to amend the complaint with respect to adding such claims.

Finally, to the extent that Nationwide objects to the continued inclusion of a negligence count against Defendant Bradford, the Court observes that said cause of action was in the amended Complaint removed to this Court and is, accordingly, not a proposed amendment in the second amended Complaint.  To the extent that Nationwide challenges the continued inclusion of

that count, the Court believes that such objection is better addressed by separate motion and briefing.  Accordingly, the Court makes no ruling with respect to the continued inclusion of this count.

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for leave to file his second amended Complaint (ECF 6).  Plaintiff is **DIRECTED** to file within 14 days of the date of this Memorandum Opinion and Order a revised second amended Complaint that is consistent with this ruling.

### III.    MOTIONS FOR SUMMARY JUDGMENT

Both parties have moved for partial summary judgment on Plaintiff's claim for attorney's fees for Plaintiff's counsel's services in obtaining the UIM policy limits from Nationwide.  (ECF 11; ECF 11-5 at 1; ECF 16; ECF 19.)

### A. *Legal Standard*

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  See Fed. R. Civ. P. 56(e).  A court must neither resolve disputed facts nor weigh the evidence.  *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995).  Nor may a court make determinations of credibility.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th

Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The moving party bears the initial burden of showing that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 322–23.  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact."  *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718–19 (4th Cir. 1991).  The non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322.  Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).  Moreover, "[m]ere unsupported speculation . . .  is not enough to defeat a summary judgment motion."  *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995); *see also Midland Mortg. Corp. v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 780, 793 (D.S.C. 2013) *aff'd sub nom. Midland Mortg. Co. v. Wells Fargo Bank NA*, 13-1370, 2013 WL 5814682 (4th Cir. Oct. 30, 2013) (observing that where party presented information "mostly through the statements set forth in its brief, without supporting evidence, . . . such statements are generally not enough to survive summary judgment" and collecting cases explaining that statements by counsel are not evidence).

B.  *Relevant Law*

Because this Court has jurisdiction based on complete diversity between the parties, this case is governed by West Virginia law.[6] *See Erie R.R. v. Tompkins,* 304 U.S. 64 (1938) (requiring federal courts sitting in diversity to apply the substantive law of the state in which they sit).

The seminal case on first-party bad faith in West Virginia is *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73 (W. Va. 1986). *See Brooks v. Chase Home Fin., Inc.*, CIV. A. 506-CV-00694, 2008 WL 2704603, at *4 (S.D. W. Va. July 3, 2008) (Johnston, J.). In *Hayseeds,* the West Virginia Supreme Court of Appeals held: "Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience." *Id.* at Syl. Pt. 1, 352 S.E.2d 73.

---

[6] Nationwide removed this case on the basis of diversity jurisdiction, asserting that Plaintiff is a citizen of West Virginia and Nationwide is an Ohio corporation and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332(a), 1441, 1446(b). (ECF 1.) Plaintiff did not object to removal or seek remand. Moreover, although Plaintiff requests an unspecified amount of damages, the parties appear to agree that the amount-in-controversy exceeds $75,000. In light of Defendant's assertions in the notice of removal, as well as Plaintiff's claims and the availability of attorney's fees and consequential damages potentially available to Plaintiff pursuant to *Hayseeds* and its progeny, the Court agrees that such amount was demonstrated by a preponderance of the evidence at the time that the notice of removal was filed. *See generally May v. Paul Revere Life Ins Co.*, 5:13CV28, 2013 WL 4099997, at *2 (N.D. W. Va. Aug. 12, 2013) (explaining that "[w]hen the amount in controversy is not apparent on the face of the plaintiff's complaint, a federal court must attempt to ascertain the amount in controversy by considering the plaintiff's cause of action as alleged in the complaint and any amendments thereto, the notice of removal filed with a federal court, and other relevant materials in the record"); *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 80 (W. Va. 1986) (holding that when a policyholder substantially prevails in a suit against an insurer, the policyholder is entitled to damages for reasonable attorney fees in vindicating his or her claim, net economic loss caused by the delay in settlement, and an award for aggravation and inconvenience); *see also Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368–69 (4th Cir. 2013) (affirming the inclusion in the amount-in-controversy calculation of the value of attorney's fees likely to be incurred throughout a declaratory judgment action where such fees were available under a Maryland statute providing that "an insurer is liable for the damages, including attorneys' fees, incurred by an insured as a result of the insurer's breach of its contractual obligation to defend the insured against a claim potentially within the policy's coverage . . ."); *cf. N. Am. Precast, Inc. v. Gen. Cas. Co. of Wisconsin*, CIV.A. 3:04-1307, 2009 WL 3017815, at *10 (S.D. W. Va. Sept. 15, 2009) (noting the "indeterminate nature" of an award for aggravation, annoyance, and inconvenience). Additionally, Defendant Bradford was dismissed by the Circuit Court of Nicholas County and is, therefore, a nominal party to this action. (ECF 1-2.) Accordingly, his citizenship is immaterial to the determination of diversity jurisdiction. *See W. Virginia ex rel. McGraw v. Fast Auto Loans, Inc.*, 918 F. Supp. 2d 551, 563 (N.D. W. Va. 2013) (observing that it is "well settled that courts should disregard nominal parties when determining whether diversity jurisdiction exists, and look instead to the real parties in interest in the controversy").

13

Later, in *Marshall v. Saseen*, 450 S.E.2d 791 (W. Va. 1994), the West Virginia Supreme Court of Appeals extended the holding in *Hayseeds* to permit a policyholder to obtain the consequential damages described in that case from an uninsured or underinsured motorist carrier. Therefore, as relevant here:

> When a policyholder of uninsured or underinsured motorist coverage issued pursuant to W. Va. Code, 33-6-31(b) substantially prevails in a suit involving such coverage under W. Va. Code, 33-6-31(d), the insurer issuing such policy is liable for the amount recovered up to the policy limits, the policyholder's reasonable attorney fees, and damages proven for aggravation and inconvenience.

Syl. Pt. 6, *Marshall*, 450 S.E.2d at 793.

There is a clear, "bright-line" standard for recovery in such cases: "[O]nce a demand is unmet by an insurance carrier, a policyholder need only prove he or she has substantially prevailed." *Miller v. Fluharty*, 500 S.E.2d 310, 320−21 (W. Va. 1997).  Settlement is not a bar to recovery under *Hayseeds* and its progeny provided that the insured substantially prevailed. *See* Syl. Pt. 6, *Smithson v. U.S. Fidelity & Guar. Co.*, 411 S.E.2d 850, 852 (W. Va. 1991) ("A first-party suit based on *Hayseeds* will not be barred by the settlement of the loss . . . if the insured substantially prevailed."); Syl. Pt. 2, *Miller*, 500 S.E.2d at 313 ("An insured 'substantially prevails' in an . . . action against his or her insurer when the action is settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action . . . .").

With respect to the "substantially prevailed" requirement, the West Virginia Supreme Court explained in *Miller v. Fluharty*:

> When examining whether a policyholder has substantially prevailed against an insurance carrier, a court should look at the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds. If the policyholder makes a reasonable demand during the course of the negotiations, within

14

> policy limits, the insurance carrier must either meet that demand, or promptly respond to the policyholder with a statement why such a demand is not supported by the available information. The insurance carrier's failure to promptly respond is a factor for courts to consider in deciding whether the policyholder has substantially prevailed in enforcing the insurance contract, and therefore, whether the insurance carrier is liable for the policyholder's consequential damages under [*Hayseeds*] and its progeny.

Syl. Pt. 4, 500 S.E.2d 313−14. Although *Miller* "expanded the range of evidence that is relevant to a determination of whether a policyholder has substantially prevailed in a dispute with an insurer," the West Virginia Supreme Court of Appeals at the same time reaffirmed that "a policyholder is not required to prove bad faith or other misconduct to recover consequential damages under *Hayseeds*." *Slider v. State Farm Mut. Auto. Ins. Co.*, 557 S.E.2d 883, 889 (W. Va. 2001).

The policy underlying *Hayseeds* and its progeny, "is that a policyholder buys an insurance contract for peace of mind and security, not financial gain, and certainly not to be embroiled in litigation. The goal is for all policyholders to get the benefit of their contractual bargain: they should get their policy proceeds promptly without having to pay litigation fees to vindicate their rights." *Miller*, 500 S.E.2d at 321. To meet its contractual obligation to provide coverage to a policyholder, an insurance carrier has a duty to conduct a prompt investigation. *Id.* at 319. Accordingly, the West Virginia Supreme Court of Appeals has further explained that:

> An insurance carrier has a duty, once a first-party policyholder has submitted proof of a loss, to promptly conduct a reasonable investigation of the policyholder's loss based upon all available information. On the basis of that investigation, if liability to the policyholder has become reasonably clear, the insurance carrier must make a prompt, fair and equitable settlement offer. *If the circuit court finds evidence that the insurance carrier has failed to properly or promptly investigate the policyholder's claim, then the circuit court may consider that evidence in determining whether the policyholder has substantially prevailed in an action to enforce the insurance contract.*

15

Syl. Pt. 3, *Miller*, 500 S.E.2d at 313 (emphasis added).   A "prompt" investigation is one "performed readily or immediately," or involves "responding instantly."   *Id.* at 319 n.12 (citations omitted).

Finally, a policyholder plaintiff only becomes entitled to recover reasonable attorney's fees from an insurance carrier when there is proof that "the attorney's services were necessary to obtain payment of the insurance proceeds."  *Richardson v. Kentucky Nat. Ins. Co.*, 607 S.E.2d 793, 801 (W. Va. 2004) (citing Syllabus Point 1, *in part, Jordan v. National Grange Mut. Ins. Co.*, 393 S.E.2d 647 (W. Va. 1990)).   In other words, the plaintiff must show that "but for" the attorney's services, the plaintiff would not have been able to recover the policy proceeds. *Hadorn v. Shea*, 456 S.E.2d 194, 198 (W. Va. 1995).

### C.  Discussion

Plaintiff argues that he is entitled to summary judgment on his *Hayseeds* claim because there are no genuine issues of material fact and he has substantially prevailed on his claim for UIM coverage now that Nationwide paid the full policy limits after he filed suit.  (ECF 11.) Plaintiff further argues that he is not required to prove wrongful or unreasonable conduct by Nationwide in order to prevail, but that even if he is, it is demonstrated here.  (ECF 19 at 4−11.)

In contrast, Nationwide argues that Plaintiff's motion for summary judgment should be denied and that, rather, it is entitled to summary judgment on Plaintiff's *Hayseeds*' claim.  (ECF 17.)  Nationwide contends that the question of whether Plaintiff's UIM policy applied centered on the factual issue of whether the accident occurred on a public or private road.  (ECF 22 at 6.) Nationwide argues that it and Plaintiff never had a "true disagreement" on that factual issue (ECF 22 at 6; ECF 17 at 12), and that, therefore, there was neither a "genuine disagreement" nor

16

a "denial of coverage" upon which Plaintiff can be said to have "substantially prevailed." (ECF 17 at 1, 12; ECF 22 at 4, 6.)

    *1.  Plaintiff's Position*

A review of the parties' arguments, summary judgment record, and pertinent law, confirms that Plaintiff has substantially prevailed on his claim for underinsured motorist coverage, and is, accordingly, entitled to *Hayseeds* damages. This is so for the following reasons.

First, Plaintiff made a reasonable demand within policy limits during the course of the parties' negotiations. *See* Syl. Pts. 3−4, *Miller*, 500 S.E.2d at 313−14, 320−21.

The parties appear to agree that Plaintiff first provided notice of a potential UIM claim in late October or early November, when Plaintiff notified Nationwide of the proposed settlement with Bradford's insurer and requested that Nationwide waive its subrogation rights. (ECF 17 at 2 ¶2; ECF 19 at 3.) Thereafter, sometime in November, Mr. Davis and Mr. Schwirian conferred by telephone. Although the parties dispute what was communicated during this conversation, this dispute is immaterial because both Plaintiff's and Nationwide's respective positions were subsequently clarified. For example, Mr. Davis indicated on December 7, 2012, that based on the facts that the ATV was "a vehicle designed for use mainly off public roads and that the accident in question did not occur on a public road" the ATV did not meet the definition of an underinsured motor vehicle in Plaintiff's policy. (ECF 16-4.) This meant, of course, that no UIM coverage would be available to Plaintiff for the accident.

Over a month later, and approximately two months from the conversation in which he agreed to do so, Mr. Davis sent Plaintiff's counsel a copy of Plaintiff's policy and reaffirmed his "understanding" that the accident "did not occur on a public road." Mr. Davis invited Mr.

Schwirian to advise him if that "understanding" was incorrect or if he believed that the policy did in fact provide coverage for Plaintiff.  Two weeks later, on January 29, 2013, Plaintiff made a policy limit demand and, along with this demand, submitted proof of loss.  Plaintiff further articulated his reasons and provided additional information as to why he believed that Nationwide's opinion that coverage did not exist was incorrect.

Accordingly, Plaintiff's position was made clear on January 29, 2013.   Indeed, Nationwide concedes that Plaintiff's counsel's January 29, 2013, letter suggested to Nationwide that the accident may have occurred on a public road triggering coverage under Plaintiff's UIM policy.  (ECF 22 at 5.)  Therefore, even crediting Nationwide's representation of the parties' respective positions prior to January 29, 2013,[7] Nationwide cannot be said to have relied after that date on Plaintiff's counsel's prior alleged confirmation regarding the location of the accident.  (ECF 17 at 2.)

Second, Nationwide did not conduct a prompt and reasonable investigation of Plaintiff's claim.  *See* Syl. Pts. 3−4, *Miller*, 500 S.E.2d at 313−14, 320−21.

Plaintiff's January 29, 2013, demand triggered Nationwide's obligation to either meet that demand, or promptly respond to Plaintiff with a statement why his demand was not supported by the available information.   *Miller*, 500 S.E.2d at 320−21.   It also triggered Nationwide's duty to promptly conduct a reasonable investigation of Plaintiff's loss based upon all available information.  *Id.*

Mr. Davis timely responded to Plaintiff on behalf of Nationwide on February 11, 2013. His letter reaffirmed that the Crash Report stated that the accident occurred on "private

---

[7] Although it is ultimately of no moment here, it appears that to fully credit Nationwide's position would require accepting as true Mr. Davis' assertions as to what Mr. Schwirian said to Mr. Davis during this conversation, which assertions are contained in an email sent to a Nationwide representative.  (ECF 16-3.)  Neither party has addressed the propriety of such statements for purposes of summary judgment.

property/off-roadway" but stated that he would further investigate the location of the accident "because of your concern." He indicated that he hoped to have this investigation into whether the accident occurred on a public roadway completed within three weeks. Notwithstanding such suggestion, neither Mr. Davis nor any other representative of Nationwide appears to have *ever* contacted Plaintiff again until after Plaintiff commenced litigation. (ECF 16-7.)

Nationwide offers a May 20, 2013, letter from Mr. Davis to other counsel for Nationwide in which Mr. Davis asserts that at some unspecified prior point in time he had unsuccessfully tried to confirm the location of the accident scene with the officer listed as the investigating officer on the Crash Report. (ECF 16-8.) For purposes of considering Plaintiff's motion for summary judgment, the Court credits this in the light most favorable to Nationwide, i.e., that Mr. Davis in fact contacted the investigating officer prior to Plaintiff filing suit. The record is otherwise silent, however, as to the scope—and indeed even the existence of—any investigation into Plaintiff's claim. Although Nationwide states in its memorandum of law that an investigation was ongoing, such unsupported assertions by counsel in a memorandum are not evidence for purposes of moving for or opposing summary judgment. Notably, even accepting the unsupported assertions by counsel as true, Nationwide provides no indication of why the investigation took so long, or why it was apparently limited to reaching out to the officer or officers who responded to the accident, rather than any other party who may have been able to help ascertain the location. Moreover, even based on Nationwide's own unsupported assertions, it did not complete this investigation until over four and a half months after Mr. Davis' letter indicated that it should take three weeks.

Indeed, by the time that Plaintiff filed suit, over 70 days had passed since Mr. Davis' letter to Plaintiff. At that time, and notwithstanding Mr. Davis' assertion that he hoped to have

the investigation completed within three weeks, not only had Mr. Davis not completed such investigation but neither he nor anyone from Nationwide appears to have provided Plaintiff with any update regarding its status.  Nearly another 70 days passed after Plaintiff sued Nationwide before Nationwide asserts that it completed its investigation and notified Plaintiff of its findings.

Such timeframes do not support a finding of a prompt investigation.  This is particularly true in light of the absence of any explanation from Nationwide as to the scope of its investigation or why the investigation took as long as it did, as well as the fact that at no time does Nationwide appear to have indicated to Plaintiff that it would need more time to investigate. *See Allen v. Progressive Classic Ins. Co.*, 5:11-cv-00036, 2011 WL 5357632 at *6 (S.D. W. Va. Nov. 3, 2011) (finding that defendant insurer did not conduct a prompt investigation where 132 days passed between the plaintiff's demand and defendant insurer's offer and where insurer did not timely notify the plaintiff of its need for additional time to investigate); *Miller*, 500 S.E.2d at 319 n.12 (explaining that a 'prompt' investigation is one 'performed readily or immediately,' or involves 'responding instantly'") (citation omitted).

This conclusion is further supported by the provisions of W. Va. C.S.R. § 114-14-6.7, which provides, as pertinent here, both that a prompt investigation is 30 days and that if an investigation remains incomplete, an insurer shall provide written notification of the delay to the claimant every 45 calendar days thereafter until the investigation is complete.  *See Allen*, 2011 WL 5357632 at *6 (noting that the "West Virginia Code of State Rules considers a prompt investigation to be thirty (30) days").  These rules are consistent with the public policy determinations that place a burden on an insurer to conduct a prompt investigation of a policyholder's claim.  *See generally Miller*, 500 S.E.2d at 319−20.  That Nationwide far

exceeded these prescribed timeframes is further evidence of its failure to conduct a prompt investigation.

For these reasons, the Court cannot conclude that Nationwide conducted a prompt investigation of Plaintiff's claim, and such conclusion is evidence that Plaintiff substantially prevailed in his action to enforce the insurance contract. *See Miller*, 500 S.E.2d at 320−21 (explaining that if the court finds evidence that the insurance carrier has failed to properly or promptly investigate the policyholder's claim, it may consider that evidence in determining whether the policyholder has substantially prevailed in an action to enforce the insurance contract).

The Court further observes that it is also not clear that Nationwide conducted a reasonable investigation after Plaintiff's January 29, 2013, demand.[8]  Nationwide provides little argument or evidence with respect to its investigation of Plaintiff's claim.  Indeed, the extent of the investigation evidenced in the record is that Mr. Davis asserts that he reached out to the investigating officer listed on the Crash Report. (ECF 16-1 at 2; ECF 16-8.)  There is no indication whether this outreach occurred before or after Plaintiff filed suit, or, for that matter, even before or after Plaintiff's January 29, 2013, demand.  Crediting Mr. Davis' statement in the light most favorable to Nationwide, however, is of no avail because Nationwide presents no argument or authority indicating that this alone amounts to a reasonable investigation.

Nationwide asserts in its memorandum of law, without citation to pertinent record evidence,  that "the responding officers eventually provided counsel for Nationwide with the

---

[8] Given the conflicting information regarding the location of the accident contained in the Crash Report it might also be argued that Nationwide's conclusion in November and December 2012 that no coverage was available to Plaintiff also did not constitute a reasonable investigation into Plaintiff's potential claim, at least to the extent that Plaintiff's October 29, 2012, letter can be understood as notifying Nationwide of a possible UIM claim.  The Court, however, has no occasion to make findings regarding the reasonableness of this initial opinion because it is clear that Nationwide has not demonstrated that it promptly conducted a reasonable investigation after Plaintiff's January 29, 2013, demand.

geographic coordinates of the location of the accident" and that "Nationwide provided those coordinates to the West Virginia Department of Highways, which confirmed that the coordinates lay along a West Virginia state road right-of-way."[9]   (ECF 17 at 6.)  Even were the Court to credit these assertions they do not explain why such confirmation took the amount of time that it did or why Nationwide did not reach out to any of the other individuals who were present at the accident scene and who might have also confirmed the location of the accident.   The Court declines to endorse the conclusion that the only reasonable method of determining the location of the accident was by obtaining the geographic coordinates from the investigating officer.   *See, e.g.*, *Nationwide Mut. Fire Ins. Co. v. Faircloth*, 3:12-CV-4, 2013 WL 4401391, at *6 (N.D. W. Va. Aug. 14, 2013) (finding that insurer's investigation was not reasonable where a prudent claims adjuster would have, at a minimum, interviewed the claimant and reviewed the pertinent medical records, and where such an investigation would have made it abundantly clear to the insurer that it did, in fact, owe coverage under the policy).

Third, Plaintiff filed suit to enforce the insurance agreement.   *See* Syl. Pt. 6, *Marshall*, 450 S.E.2d at 793, 797 (explaining that insurer is liable for *Hayseeds* damages "[w]hen a policyholder of [UIM coverage] substantially prevails *in a suit* involving such coverage") (emphasis added); *cf. McCormick*, 475 S.E.2d at 513−14 (explaining that under the authority of *Hayseeds* and its progeny, "if the insured *suing* an insurer . . . substantially prevails" the insurer is liable for certain consequential damages) (emphasis added).   This suit was filed nearly three months after Plaintiff made his demand for policy limits, asserting that the accident occurred on a public road and, therefore, fell under his UIM coverage, and over two months after Nationwide, through Mr. Davis, indicated that it would investigate Plaintiff's assertions regarding whether the accident occurred on a public road.   At the point of filing suit, Plaintiff's

---

[9] The portion of the record Nationwide cites (ECF 16-8) contains no support for this assertion.

last communication from Nationwide appeared to reaffirm Nationwide's position that the accident did not occur on a public road, and Plaintiff had heard nothing from Nationwide regarding the status of the investigation into that issue. Indeed, shortly thereafter, Nationwide removed the action to federal court and filed an answer to Plaintiff's amended Complaint denying the allegation that it was under an obligation to provide UIM coverage to Plaintiff.

Fourth, over two months after Plaintiff sued Nationwide, Nationwide concluded that the accident did occur on a public road, and that, therefore, Plaintiff was entitled to the policy proceeds under his UIM policy. Nationwide tendered payment to Plaintiff in the full amount of his policy limits (ECF 11-4 at 1), which policy proceeds Nationwide indicated were "due him pursuant to the contract of insurance" (ECF 9-1 at 1). *See generally* Syl. Pt. 4, *Jones*, 618 S.E.2d at 575 (noting that an insured substantially prevails in an action against his insurer when the action is settled for an amount equal to or approximating the amount claimed) (citations omitted); *cf. Allen*, 2011 WL 5357632 at *6 (explaining that *Miller v. Fluharty* makes it clear that the determination of whether a plaintiff has substantially prevailed is not a simple mathematical calculation but requires looking at the negotiations as a whole).

Fifth, Plaintiff's counsel's assistance was necessary to obtain payment of the insurance proceeds. *See* Syl. Pt. 2, *Miller*, 500 S.E.2d at 313. Counsel obtained and reviewed the relevant documents and submitted a demand, arguing that the available facts and policy language indicated that Nationwide's initial position that coverage was not applicable was incorrect. Plaintiff's position was vindicated by Nationwide's subsequent determination that Plaintiff was, in fact, entitled to the policy limits of his UIM policy. Moreover, every indication in the record

23

is that but for Plaintiff's January 29, 2013, letter, Nationwide wound not have conducted a more detailed investigation and would have still denied Plaintiff's claim.[10]

   2. *Nationwide's Position*

   The Court has also considered Nationwide's arguments made in opposition to Plaintiff's motion and in support of its motion for partial summary judgment and finds them unpersuasive.

   First, Nationwide argues that Plaintiff could not substantially prevail because there was no "genuine disagreement" between the parties regarding coverage. (ECF 22 at 6−8.) Nationwide cites no authority in support of its contention that such a "genuine disagreement" is required for a Plaintiff to substantially prevail, and, indeed, the pertinent authority appears to be to the contrary. As the West Virginia Supreme Court of Appeals explained in *Miller v. Fluharty*, when a reasonable demand within policy limits is made during the course of negotiations, as it was here, the insurance carrier must either meet that demand or promptly respond to the policyholder with a statement why such a demand is not supported by the available information. 500 S.E.2d at 321. Additionally, the insurer has a duty to promptly conduct a reasonable investigation of a policyholder's loss based upon all available information. *Id.* at 320. Evidence that an insurer "has failed to properly or promptly investigate the policyholder's claim" is evidence that the [court] "may consider in determining whether the policyholder has substantially prevailed in an action to enforce the insurance contract." *Id.* The West Virginia Supreme Court of Appeals has simply not articulated a "genuine disagreement" threshold as Nationwide contends.

---

[10] For example, in addition to the December, 7, 2012, January 16, 2013, and February 11, 2013, letters in which Mr. Davis reaffirmed Nationwide's position that the accident did not occur on a public road, Mr. Davis also indicated that he told Mr. Schwirian during their disputed November 2012 phone conversation that if Mr. Schwirian disagreed with Nationwide's position that no coverage was available to Plaintiff he would "most likely file a claim for declaratory relief on the coverage issue." (ECF 16-3.)

Moreover, to the extent that it could be argued that a "genuine disagreement" is necessarily implied whenever an insurer does not meet a policy holder's demand but rather responds by stating why that demand is not supported by the available evidence, such a requirement is satisfied under the facts presented here. Contrary to Nationwide's contention, after January 29, 2013, it is clear that Plaintiff and Nationwide did in fact disagree as to what the relevant facts were, and, therefore, whether coverage was available to Plaintiff. At the time that Plaintiff made his policy-limits demand on January 29, 2013, Nationwide had already stated its position that coverage was not available to Plaintiff based on the facts that Nationwide believed were relevant in the Crash Report. (ECF 16-4; 16-1.) Nationwide reasserted that position in replying to Plaintiff's January 29, 2013, letter (ECF 16-7), even as it agreed to investigate the location of the accident in light off Plaintiff's demand. It also reaffirmed that position in its Answer to Plaintiff's complaint. (ECF 4 at 3.)

Additionally, to the extent that Nationwide suggests a formal "denial of coverage" is required for Plaintiff to substantially prevail, again, the applicable authority appears to be to the contrary. Indeed, the West Virginia Supreme Court of Appeals observed in *Miller* that "[u]nder *Hayseeds*, the policyholder's consequential damages are based upon the insurance carrier's *delay in settlement* . . . ." 500 S.E.2d at 321 n.16 (emphasis added). The *Miller* Court also clarified prior holdings by explaining that plaintiff is not even required to make a demand against his or her own insurance carrier prior to initiating litigation against a third-party tortfeasor in order to recover consequential damages under *Hayseeds* "for an insurance carrier's delay." 500 S.E.2d at 321; *see also id.* (explaining that the court should look at the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds to determine if the policyholder substantially prevailed).

25

Second, Nationwide also contends that imposing *Hayseeds* liability here would amount to imposing bad faith liability.  The Court rejects that conclusion, because Nationwide's liability under *Hayseeds* and *Miller* arises from its failure to promptly conduct a reasonable investigation into Plaintiff's January 29, 2013, demand and from the fact that Plaintiff substantially prevailed after filing suit to recover the proceeds of his UIM policy.  The question of bad faith is not before the Court, and, to be clear, no findings of bad faith have been made.

Third, Nationwide argues that *Hayseeds* liability is inappropriate because Plaintiff filed suit before Nationwide's investigation was complete, and without first inquiring as to the status of that investigation with Nationwide.  Nationwide cites no authority in support of its contention that Plaintiff had an affirmative duty to inquire or give notice of his intent to sue in the face of Nationwide's silence, and, again, the pertinent authority appears to be to the contrary.  For example, *Miller* clearly places the burden on the insurer to promptly conduct a reasonable investigation after a plaintiff makes a demand and submits proof of loss.  500 S.E.2d at 320.  The burden is also on the insurer to make a prompt, fair and equitable settlement offer when that investigation indicates that liability to the policyholder is reasonably clear.  *Id.*  Similarly, W. Va. C.S.R. § 114-14-6.7 imposes the burden on the insurer to provide written notification to the insured when an investigation requires more than 30 days or is otherwise delayed, evincing a policy choice to assign such responsibility to the insurer, not the insured.  Indeed, imposing an affirmative duty on the insured as Nationwide suggests would contravene the policy rationales underlying *Hayseeds* and its progeny.  *See, e.g.*, *Hayseeds*, 353 S.E.2d at 79 (noting that "when an insured purchases a contract of insurance, he buys insurance—not a lot of vexatious, time-consuming, expensive litigation with his insurer").  Accordingly, the Court finds this argument to be without merit.

26

Finally, the Court has also reviewed Nationwide's recently filed second motion for partial summary judgment. (ECF 36.) In this motion and accompanying memorandum of law, Nationwide principally reiterates the argument already made in its first motion for partial summary judgment that Plaintiff cannot be said to have substantially prevailed because there was never a "genuine disagreement" between the parties (ECF 16), but provides some additional factual support from Plaintiff's deposition.

For example, Nationwide newly avers that Plaintiff's counsel incorrectly indicated where the accident occurred in his January 29, 2013, letter. (ECF 37 at 5.) Plaintiff, however, does not have a burden to conduct an investigation of his own claim. *See Miller*, 500 S.E.2d at 320. Rather, that burden is on the insurer, and the policyholder need only make a reasonable demand within policy limits during the course of negotiations. *Id.* Here, Plaintiff's demand was for the policy limits and, in light of the information available at the time, which information was included with Plaintiff's demand letter, Plaintiff's demand was clearly reasonable.

Nationwide also newly notes that Plaintiff stated in his deposition that he did not know for a fact whether the accident occurred on a public road or not. (ECF 37 at 6.) Plaintiff's UIM policy, however, does not turn on his subjective perception of whether the road on which the accident occurred was a public road.

Ultimately, these and the other newly asserted facts simply demonstrate why an investigation regarding the location was necessary. The problem for Nationwide, however, is that it did not conduct such an investigation consistent with the requirements forth by the West Virginia Supreme Court of Appeals.

Moreover, although as Nationwide points out (ECF 37 at 13), Plaintiff's amended complaint alleges that Nationwide "denied" UIM coverage for the accident, it also alleges that

Nationwide has "wrongfully failed to pay" the policy limits to which he was entitled. (ECF 1-1 at 3.) As such, even crediting Nationwide's assertion that it did not deny coverage, it does not mean that Plaintiff cannot be said to have substantially prevailed on his claim that Nationwide wrongfully failed to pay the UIM policy limits.

Accordingly, after examining the negotiations as a whole from the time of the accident to the final payment of insurance proceeds in the light most favorable to Nationwide, the Court **FINDS** that there is no genuine issue of material fact and that as a matter of West Virginia law Plaintiff has substantially prevailed in enforcing his insurance contract with Nationwide, and that, therefore, Nationwide is liable for Plaintiff's consequential damages under *Hayseeds* and its progeny. *See Miller*, 500 S.E.2d at 321.

### D. Amount of Hayseeds Damages

Plaintiff seeks attorney's fees of $6,666.66, representing contingency fees of 33 1/3 percent, as well as costs of $36.70. Nationwide has not disputed the reasonableness of the fees and costs sought by Plaintiff, and the Court concludes that the requested fees are reasonable under the applicable case law. *See Hayseeds*, 352 S.E.2d at 80 (explaining that "[p]resumptively, reasonable attorney's fees in this type of case are one-third of the face amount of the policy"); *Richardson*, 607 S.E.2d at 801 (explaining that under *Hayseeds* "a reasonable attorney's fee is presumptively one-third of the face amount of the policy, *unless the amount disputed* under the policy is either extremely small or enormously large") (emphasis added); *see also Nationwide Mut. Fire Ins. Co. v. Faircloth*, 3:12-CV-4, 2013 WL 4647690, at *4−6 (N.D. W. Va. Aug. 29, 2013) (reviewing for reasonableness pursuant to the factors identified in *Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156 (W. Va. 1986), where the insurer argued that the plaintiffs' recovery of attorney's fees under *Hayseeds* should not be one-third of the liability

policy).  Plaintiff does not appear to allege any *Hayseeds* damages for net economic loss caused by the delay in settlement.  (ECF 1-1 at 4.)  Additionally, to the extent that the amended complaint seeks damages for "annoyance and inconvenience," Plaintiff's instant motion does not seek any such relief.

Accordingly, the Court **GRANTS** Plaintiff's motion for partial summary judgment (ECF 11), **DENIES** Defendant's motion for partial summary judgment (ECF 16), **DENIES AS MOOT** Defendant's second motion for partial summary judgment (ECF 36), and **ORDERS** Nationwide to pay Plaintiff $6,666.66 in attorney's fees and $36.75 in costs.

## IV.     *ATTORNEY'S FEES FOR SUMMARY JUDGMENT*

Plaintiff also requests an award of his attorney's fees for the time spent litigating this attorney's fee award, specifically for the reply that he filed (ECF 19 at 13−14) to Nationwide's response and motion for partial summary judgment (ECF 16).  Nationwide does not appear to have opposed such request in any of the briefing it filed subsequent to that request being made. (ECF 22.)

Additional attorney's fees will be awarded, if at all, only upon Plaintiff's submission of a detailed itemization of hours billed and costs charged relating to the instant motions, as well as other supporting documents as necessary, within 30 days of the entry of this Memorandum Opinion and Order.  *See generally Koontz v. Wells Fargo N.A.*, 2:10-CV-00864, 2013 WL 1337260 (S.D. W. Va. Mar. 29, 2013) (discussing standards for evaluating requests for attorney's fees).  Additionally, Plaintiff shall also submit a memorandum of law of not more than 10 pages in support of his contention that he is entitled to receive such fees.  Nationwide's response, if any, shall be filed within 14 days of service of Plaintiff's submission and should also be accompanied by a memorandum of law of not more than 10 pages.

## V.    CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for leave to file a second amended Complaint [ECF 6], **GRANTS** Plaintiff's motion for partial summary judgment [ECF 11], **DENIES** Nationwide's motion for partial summary judgment [ECF 16], **DENIES AS MOOT** Nationwide's second motion for partial summary judgment [ECF 36], and **ORDERS** Nationwide to pay Plaintiff $6,666.66 in attorney's fees and $36.75 in costs.  The Court further **DIRECTS** that Plaintiff's second amended Complaint is to be filed no later than 14 days from the date of this Memorandum Opinion and Order, and that Plaintiff's motion and accompanying memorandum of law for attorney's fees related to litigating his *Hayseeds* claim are to be filed no later than 30 days from the date of entry of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record.

ENTER:        March 28, 2014

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE